**MSG**

**JS 44** (Rev. 12/07)

# CIVIL COVER SHEET

16-CV- 2280

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

MATTHEW YOUNG

## DEFENDANTS

2. SHIESEIDO GROUP USA

(b) County of Residence of First Listed Plaintiff  Chester
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  New York County
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Gallagher Law Group, PC, 1055 Westlakes, Berwyn, PA 19312
610-647-5027

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | **PERSONAL INJURY** | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | ☐ 362 Personal Injury - | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | Med. Malpractice | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | ☐ 320 Assault, Libel & | ☐ 365 Personal Injury - | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | Slander | Product Liability | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 330 Federal Employers' | ☐ 368 Asbestos Personal | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | Injury Product | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 340 Marine | Liability | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 345 Marine Product | **PERSONAL PROPERTY** | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Liability | ☐ 370 Other Fraud | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 355 Motor Vehicle | ☐ 380 Other Personal | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | Product Liability | Property Damage | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 360 Other Personal | ☐ 385 Property Damage | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | Injury | Product Liability | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | **CIVIL RIGHTS** | **PRISONER PETITIONS** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | ☐ 441 Voting | ☐ 510 Motions to Vacate | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☒ 442 Employment | Sentence | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 443 Housing/ | **Habeas Corpus:** | **IMMIGRATION** | | Under Equal Access |
| | Accommodations | ☐ 530 General | ☐ 462 Naturalization Application | | to Justice |
| | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 463 Habeas Corpus - | | ☐ 950 Constitutionality of |
| | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | Alien Detainee | | State Statutes |
| | Employment | ☐ 550 Civil Rights | ☐ 465 Other Immigration | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Actions | | |
| | Other | | | | |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
29 U.S.C. §2601 et seq.,

Brief description of cause:
Family and Medical Leave Act

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $  150,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____    DOCKET NUMBER _____

DATE  04/22/2016

SIGNATURE OF ATTORNEY OF RECORD  /s/John A. Gallagher

APR 23 2016

### FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**    **16   2280** **APPENDIX F**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: **MSG** Birmingham Toad, West Chester, Pa 19382

Address of Defendant: 900 Third Avenue, 15ᵗʰ Floor, NY, NY 10022-4795

Place of Accident, Incident or Transaction:_____West Chester, PA_____    (Use Reverse
Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes☐  No☒

Does this case involve multidistrict litigation possibilities?    Yes☐  No☒

**RELATED CASE, IF ANY:**
Case Number: __N/A_____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?    Yes☐  No☒

CIVIL: (Place __ in ONE CATEGORY ONLY)
A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. Civil Rights
8. ☐ Habeas Corpus
9. ☑ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. **XXX** All other Federal Question Cases –FMLA
(Please specify)

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. All other Diversity Cases
(Please specify)

APR 23 2016

# ARBITRATION CERTIFICATION

*(Check appropriate Category)*

I, _____John A. Gallagher_____, counsel of record do hereby certify:

___X___ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case does not exceed the sum of $150,000.00 exclusive of interest and costs;

___ Relief other than monetary damages is sought.

DATE: ___April 22, 2016_____   ___John A. Gallagher_____      ___61914___
                                                    Attorney-at-Law                                        Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: April 22, 2016_   ___John A. Gallagher_____      ___61914___
                                       Attorney-at-Law                                        Attorney I.D.#

**APPENDIX I**

**MSG**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**
**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | |
|---|---|
| MATTHEW YOUNG | : |
| Plaintiff | : CIVIL ACTION NO.: |
| | : |
| v. | : **16   2280** |
| | : |
| SHISEIDO GROUP USA | : |
| and | : |
| SHISEIDO AMERICAS CORPORATION | : |
| and | : |
| BEAUTE PRESTIGE INTERNATIONAL SA | : |
| | : **JURY TRIAL DEMANDED** |
| Defendants | : |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits                          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                 ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.        ( x )

| | | | |
|---|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** | APR 23 2016 |
| 04/22/15 | John A. Gallagher, Esq. | Plaintiff | |
| **Telephone** | **FAX Number** | **E-Mail Address** | |
| 610-647-5027 | 610-647-5024 | jag@johnagallagher.com | |



**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MATTHEW YOUNG | : |
| Plaintiff | : CIVIL ACTION NO.: |
| | : |
| v. | : |
| | : |
| SHISEIDO GROUP USA | : |
| | : |
| and | : |
| | : |
| SHISEIDO AMERICAS CORPORATION | : |
| | : |
| and | : |
| | : |
| BEAUTE PRESTIGE INTERNATIONAL SA | : |
| | : |
| | : JURY TRIAL DEMANDED |
| Defendants | : |

## COMPLAINT

Plaintiff, Matthew Young, by and through his undersigned counsel, the Gallagher Law Group, P.C., files this Complaint against defendants, Shiseido Americas Corporation and Beaute Prestige International (collectively "Shiseido" where appropriate), and in support thereof avers as follows:

### THE PARTIES

1.      Mr. Young is an adult individual residing at 496 Birmingham Toad, West Chester, Pa 19382.

2.      Mr. Young was employed by defendants from on or about February 4, 2013 through April 22, 2014.

3.    Shiseido Group USA ("SGU") is upon information and belief a corporate

business entity registered and licensed to do business in Pennsylvania with its principle place of

business located at 301 Rte. 17N, 10th Floor, Rutherford, NJ 07070.

4.    Shiseido Americas Corporation ("SAG") is upon information and belief a

corporate business entity registered and licensed to do business in Pennsylvania with its principle

place of business located at 900 Third Avenue, 15th Floor, NY, NY 10022-4795.

5.    Beaute Prestige International SA ("BPI") is upon information and belief a

corporate business entity registered and licensed to do business in Pennsylvania with its principle

place of business located at 900 Third Avenue, 9th Floor, New York, NY 10022-4795.

**Each Defendant Exercised Dominion and Control Over Material
Aspects of Plaintiff's Employment so That Each Defendant, Standing
Alone Would, Absent Consideration of the Conduct of the Other
Defendants, Demonstrate That it Was Plaintiff's Statutory Employer
as well as his Employer in Fact
and
The Very Conduct by Each Defendant That Demonstrated Dominion
and Control Over Plaintiff's Day to Day Activities When Viewed in
Isolation *Viz* the Conduct of the Other Defendants, Such Conduct
When Viewed in Tandem with That of the Other
Defendants, Creates a Persuasive Presumption
That They Were Plaintiff's Joint Employers
or
That They Together Constituted Plaintiff's Single Employer**

6.    As the following examples illustrate, each of the defendants has at various times

represented and/or held itself out, both to the plaintiff and to governmental authorities, the it

was plaintiff's "true" employer:  employer, the following being three (3) illustrative examples:

   a.  Around the time Mt. Young accepted employment with defendants, he was shown
       and/or provided a document styled "Shiseido Americas Corporation Proprietary
       Information Agreement" ("PIA");

   b.  The PIA was issued on the letterhead of "Shiseido Beaute Prestige International
       USA.;

2

c. Underneath this letterhead, the PIA begins, "in consideration of my employment with Shiseido Americas Corporation.";

d. Upon his termination for alleged poor performance, plaintiff was provided a document styled, "Special Severance Agreement and Release" ("Severance Agreement"). The Severance Agreement, which plaintiff did not execute, was issued under the letterhead of SGU;

e. On documentation submitted to Pennsylvania governmental authorities, Christine Elkas, identified herself thereon as The Human Resource Manager of BPI;

f. On this same documentation, Ms. Elkas stated the Mr. Young was employed by BPI at 900 Third Ave., New York, NY.

g. On her extant Linked-In page, Ms. Elkas states that she was during 2013 and 2014 "Human Resources Manager Shiseido Group USA: Shiseido Cosmetics America, NARS Cosmetics, Beaute Prestige International - New York, New York."

h. In or around this very same time, a woman named Aisha employed by one of the defendants informed a governmental authority that plaintiff worked for BPI in Rutherford, New Jersey.

7.      On its Website, SUG refers to numerous Shiseido divisions, subsidiaries and

affiliates, and refers toto itself and said entities as "the Group.

8.      The Severance Agreement and the PIA similarly identify various Shiseido

businesses, and thereafter refer to all as "the Group."

9.      During the entirety of plaintiff's employment, SAG, BPI and another member of

"the Group," NARS, each occupied their own flor, separate from one another, at the 900 3rd

Avenue building.

10.     From the outset of his employment, Mr. Young was instructed that he was report

to BPI's office on the 9th floor.

11.     When required to be in New York, plaintiff reported almost exclusively to the 9th

floor at 900 3rd Avenue.

12.     Mr. Young's direct supervisor was Tara Matteo, who on her linked in page self-

identifies herself as "Executive Director of Sales - Retail Development at Shiseido Americas."

3

c. Underneath this letterhead, the PIA begins, "in consideration of my employment with Shiseido Americas Corporation.";

d. Upon his termination for alleged poor performance, plaintiff was provided a document styled, "Special Severance Agreement and Release" ("Severance Agreement"). The Severance Agreement, which plaintiff did not execute, was issued under the letterhead of SGU;

e. On documentation submitted to Pennsylvania governmental authorities, Christine Elkas, identified herself thereon as The Human Resource Manager of BPI;

f. On this same documentation, Ms. Elkas stated the Mr. Young was employed by BPI at 900 Third Ave., New York, NY.

g. On her extant Linked-In page, Ms. Elkas states that she was during 2013 and 2014 "Human Resources Manager Shiseido Group USA: Shiseido Cosmetics America, NARS Cosmetics, Beaute Prestige International - New York, New York."

h. In or around this very same time, a woman named Aisha employed by one of the defendants informed a governmental authority that plaintiff worked for BPI in Rutherford, New Jersey.

7.      On its Website, SUG refers to numerous Shiseido divisions, subsidiaries and

affiliates, and refers toto itself and said entities as "the Group.

8.      The Severance Agreement and the PIA similarly identify various Shiseido

businesses, and thereafter refer to all as "the Group."

9.      During the entirety of plaintiff's employment, SAG, BPI and another member of

"the Group," NARS, each occupied their own flor, separate from one another, at the 900 3rd

Avenue building.

10.      From the outset of his employment, Mr. Young was instructed that he was report

to BPI's office on the 9th floor.

11.      When required to be in New York, plaintiff reported almost exclusively to the 9th

floor at 900 3rd Avenue.

12.      Mr. Young's direct supervisor was Tara Matteo, who on her linked in page self-

identifies herself as "Executive Director of Sales - Retail Development at Shiseido Americas."

3

13.    Plaintiff believes, and therefore avers, that Ms. Matteo was in fact an employee of

BPI.

14.    On many occasions throughout his employment, plaintiff met with Ms. Matteo at

the BPI offices situate on the 9th floor at 900 3rd Avenue.

15.    It at all times appeared to plaintiff that Ms. Matteo had her own office within the

BPI suite of offices.

16.    Plaintiff believes, and therefore avers, that during his employment, Ms. Matteo

reported directly to Barbara Luisi.

17.    On her LinkedIn Profile, Ms. Luisi (who is no longer with the Shiseido group),

self identifies as having been a VP and Executive at BPI Beaute International, and her belief is

appears confirmed by the following :

**Beaute Prestige International USA Taps** Barbara Luisi as VP of Sales

`NEW YORK, July 12 /PRNewswire-FirstCall/ -- Beaute Prestige International USA,
the US division of the Paris-based luxury fragrance company and a division of Shiseido
Americas Corporation, has selected Barbara Luisi as its new Vice President of Sales.
The company officially welcomed Ms. Luisi on July 12th.

18.    Elena Stella, Vice President, Human Resources at Shiseido Americas

Corporation, executed the Special Severance Agreement.

19.    Plaintiff believes, and therefore avers, that SGU, SAG and BPI are plaintiffs join

20.    Each of the defendants has at various times represented and/or held itself out to be

plaintiff' employer, the following being three (3) illustrative examples:

a. Around the time Mt. Young accepted employment with defendants, he was shown
   and/or provided a document styled "Proprietary Information Agreement." This
   document began, "In consideration of my employment with Shiseido Americas
   Corporation...";

b. Upon his termination for alleged poor performance, plaintiff was provided a
   document styled, "Special Severance Agreement and Release" ("Severance
   Agreement"). The Severance Agreement, which plaintiff did not execute was issued
   under the letterhead of SGU;

4

c. On documentation submitted to Pennsylvania governmental authorities, Christine Elkas, who identified herself thereon as The Human Resource Manager of BPI, stated the Mr. Young was employed by BPI at 900 Third Ave., New York, NY. On her extant Linked-In page, Ms. Elkas states that she was during 2013 and 2014 "Human Resources Manager Shiseido Group USA: Shiseido Cosmetics America, NARS Cosmetics, Beaute Prestige International - New York, New York."

21.     The Internet is at any given time populated by "Career Opportunity" postings that may at any given time have 50 or more job opportunities at exclusively Shiseido-related employers identified by a legend such as the following:



## JURISDICTION

22.     The Court has jurisdiction over this matter by its authority to hear cases arising under the laws of the United States pursuant to 28 U.S.C. §1331, and the specific jurisdictional provisions found within the Family and Medical Leave Act of 1993, 29 U.S.C. §2601 *et seq.,* ("FMLA"). Plaintiff is further alleging a violation of his rights under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq*. ("FLSA").

23.     Plaintiff is in addition to the aforementioned claims seeking recovery under Pennsylvania's common law governing breach of contract, and  in accordance with or pursuant to the provisions of Violation of Pennsylvania's Minimum Wage Act, 43 P.S.§§336.1, *et seq*. ("PMWA") and for Recovery Permitted Pursuant to Pennsylvania's Wage Payment and Collection Law, 43 Pa.C.S.A. § 260.1 *et seq*. ("WPCL").

24.     The Court has jurisdiction over the state law claim(s) set forth herein pursuant to

28 U.S.C. §1367(a), as same is/are closely related to the claims in the action within the Court's

original jurisdiction.

## VENUE

25.     Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C.S.

§1391(b) because, *inter alia*, 1) all, the substantial majority of or at a minimum most of

plaintiff's claims arose in the Eastern District of Pennsylvania.

## FACTUAL BACKGROUND RE: OVERTIME CLAIMS

26.     Mr. Young began his employment with Shiseido on or about February 4, 2013,

and was designated an "Account Manager."

27.     Plaintiff was during his employment paid on a salary basis ($55,000 per annum),

plus bonus.

28.     Shiseido is a manufacturer/distributor of cosmetic products that are sold in retail

establishments.

29.     During his employment with Shiseido, plaintiff managed accounts at retail

establishments located throughout southeastern Pennsylvania and central, south and north New

Jersey.

30.     Plaintiff's primary duties consisted of securing proper placement and display of

Shiseido cosmetic products in retail establishments.

31.     Most, if not all, of the retail establishments managed by plaintiff during his

employment had been selling Shiseido products to the public prior to plaintiff's commencement

of employment with Shiseido.

32.     At the commencement of plaintiff's employment, Shiseido provide him with a list

of his clients (e.g. retail establishment such as the Macy's located in the King of Prussia Mall)

6

and the Shiseido products that were currently sold by said clients to their retail customers (e.g. the public).

33.     Plaintiff at no time took orders from his clients for the purchase of products by them from Shiseido.

34.     Rather, plaintiff's primary job was to track sales being made by his clients to their retail customers, to report on such sales to Shiseido and to encourage his clients on methods by which they could increase their volume of sales to their customers, the public.

35.     In other words, and using Macy's as an example:

a.      Plaintiff never took an order from Macy's for the purchase by Macy's of 300 lipsticks from Shiseido; and

b.      Plaintiff always kept track of how many lipsticks per month were sold by Macy's to its customers, the public.

36.     At the outset of plaintiff's employment, Shiseido informed Mr. Young that he was "an outside salesman," and as such was exempt from receiving overtime pay.

37.     Plaintiff believes, and therefore avers, that Shiseido knew that plaintiff was not "an outside salesman," but nevertheless intentionally used that misleading nomenclature in order to deter plaintiff from investigating, complaining about, reporting (to state/federal authorities) or otherwise contesting their unlawful overtime-related practice.

38.     This scheme worked, because it was not until subsequent to being fired that plaintiff first learned, upon consultation with counsel, that he was, in fact, not involved in "outside sales" as that term is defined under the law, and was therefore entitled to be compensated for the overtime hours that he had worked, but had not been paid.

39.     During his employment with Shiseido, plaintiff believes, in good faith, that he worked no less than an average of 55-65 hours per week.

7

40.     Plaintiff believes that defendants' violation of state and federal overtime laws was deliberate, wanton, willful and specifically designed to maximize its opportunity to "get away with" depriving non-exempt employees of the overtime compensation they had earned, but were not paid.

## FACTUAL BACKGROUND RE: FMLA CLAIM

### A.     Defendants is an Employer Covered by the FMLA

41.     At all times during the relevant period, Shiseido employed in excess of 50 persons within a 75-mile radius of plaintiff's work location(s).

42.     Accordingly, Shiseido is a covered "employer" as that term is defined at §2611(4)(A)(i) of the FMLA.

### B.     Mr. Young is an Employee Covered by the FMLA

43.     Mr. Young began his employment with Shiseido in or around February 2013, and worked on a full-time basis as an "Account Manager."

44.     Mr. Young had been employed by Shiseido for more than 12 months and had worked in excess of 1,250 hours during the 12 months preceding his FMLA-covered leave(s).

45.     Accordingly, he is a covered "employee" as that term is defined at §2611(2) of FMLA.

46.     At all times relevant hereto, Mr. Young was eligible for FMLA leave, having not exhausted his rights thereto during the 12 months preceding his termination.

### C.     History of Serious Medical Condition and Disclosure of Same to Employer

47.     Plaintiff has since his adolescence suffered from a serious health condition that required regular supervision from a medical provider, and the administration of prescription medication that plaintiff has taken on a regular basis.

8

48.     Subsequent to the commencement of his employment, while at an Olive Garden in New Jersey, plaintiff disclosed his medical condition and course of treatment to his supervisor, Tara Matteo.

**D.      Family Leave in April 2014**

49.     At 8:01 a.m. on Wednesday April 9, 2014, Ms. Matteo contacted plaintiff and issued an exigent directive -- plaintiff was to drop whatever he was doing, grab his company-issued laptop computer and drive to New York by no later than 12:30 p.m. for a face-to-face meeting with Ms. Matteo.

50.     Plaintiff acknowledges that, on the way to New York, Ms. Matteo's out-of-the blue directive that he grabbed his laptop and made it to New York in no more than 3-hours' time for a face-to-face meeting caused him to consider the possibility that he was going to be fired.

51.     This caused him to experience significant feelings of anxiety, dread and fear, and attendant physiological manifestations of same, during his drive to New York (which was in and of itself highly stressful due to the suddenness of same and the limited amount of time he had to get to the meeting in New York).

52.     Driving with the highest degree of alacrity possible under the circumstances (which resulted in extraordinary duress to his nervous system) plaintiff arrived at the meeting during the early portion of the afternoon on April 9.

53.     To plaintiff's great relief, the ensuing meeting was positive, productive and highlighted by Ms. Matteo's words of encouragement and constructive advice on how plaintiff could better improve his job performance in the future.

54.     During the meeting, and despite Ms. Matteo's positive approach to same, plaintiff could not shake his earlier feelings of dread and concern, which lead him to ask Ms. Matteo directly if Shiseido sought his resignation and/or intended to terminate his employment.

9

55.     Ms. Matteo assured plaintiff that Shiseido neither sought his resignation nor intended to terminate his employment.

56.     Ms. Matteo did not issue any sort of written warning or performance improvement plan during the meeting, nor did she seek to take possession of plaintiff's company-issued laptop computer.

57.     During the meeting, plaintiff listened intently to Ms. Matteo, expressed appreciation for her guidance and affirmed his commitment to continue to strive to be the best employee he could be.

58.     Plaintiff departed from that meeting with his company-issued laptop computer, and a sense of confidence in his future opportunities for growth with Shiseido.

59.     He therefore called Ms. Matteo on April 9, and informed her that he was experiencing an exacerbation of the serious medical condition he had previously disclosed to her.

60.     He further advised that, due to his current condition, he believed that he was unable to fulfill his job responsibilities, and requested leave in order to resolve same.

61.     Ms. Matteo expressed understanding of plaintiff's condition, and advised plaintiff to take the rest of the week off.

62.     Plaintiff, who was scheduled to work on Thursday April 10 and Friday April 11, took leave on those two days.

63.     Plaintiff had scheduled off days on Sunday and the following Monday (April 13-14).

64.     Shiseido did not any time in between plaintiff's departure from work on April 9 and the morning of Tuesday April 15 send any FMLA paperwork to Mr. Young, nor did it take any actions known to Mr. Young to designate (or even consider designating) Mr. Young's leave as FMLA-covered leave.

10

65.     Moreover, plaintiff does not recall receiving any communications from Shiseido during this time period.

66.     Believing his condition sufficiently improved, plaintiff returned to work on Tuesday April 15, 2014, and performed his normal duties during that morning.

67.     Unfortunately, throughout that morning Mr. Young experienced, with increasing and seemingly continuous intensification, acute manifestations of very same symptoms that had necessitated his leave the prior week.

68.     By the afternoon of April 15, 2014, plaintiff's symptoms became so acute that he was unable to perform his essential job functions.

69.     Consequently, during the afternoon of Tuesday, April 15, 2014, plaintiff informed Ms. Matteo that he was again experiencing symptoms of the serious medical condition that had resulted in his leave the preceding week, and informed her that he sought leave from work so that he could, *inter alia*, seek treatment by a medical professional.

70.     Ms. Matteo consented to plaintiff to plaintiff taking leave from work without delay, and requested that plaintiff submit a note from his medical provider as soon as possible.

71.     Soon after his departure on the After 15th, plaintiff was examined by Dr. Jennifer Keah, M.D., a physician with Brandywine Medical Practice of Exton.

72.     On April 17, 2014, Dr. Keah advised plaintiff that she believed it was necessary for him to remain out of work until April 24, 2014 in order to facilitate resolution of his acute medical condition.

73.     On April 17, 2014, Dr. Keah executed a Return to Work/School form, stating that plaintiff would be able to return to work on April 24, 2014.

74.     Subsequent to his April 17 examination, plaintiff from time to time assisted with work-related matters, and was in contact with Ms., Mateo and others.

11

65.     Moreover, plaintiff does not recall receiving any communications from Shiseido during this time period.

66.     Believing his condition sufficiently improved, plaintiff returned to work on Tuesday April 15, 2014, and performed his normal duties during that morning.

67.     Unfortunately, throughout that morning Mr. Young experienced, with increasing and seemingly continuous intensification, acute manifestations of very same symptoms that had necessitated his leave the prior week.

68.     By the afternoon of April 15, 2014, plaintiff's symptoms became so acute that he was unable to perform his essential job functions.

69.     Consequently, during the afternoon of Tuesday, April 15, 2014, plaintiff informed Ms. Matteo that he was again experiencing symptoms of the serious medical condition that had resulted in his leave the preceding week, and informed her that he sought leave from work so that he could, *inter alia*, seek treatment by a medical professional.

70.     Ms. Matteo consented to plaintiff to plaintiff taking leave from work without delay, and requested that plaintiff submit a note from his medical provider as soon as possible.

71.     Soon after his departure on the After 15th, plaintiff was examined by Dr. Jennifer Keah, M.D., a physician with Brandywine Medical Practice of Exton.

72.     On April 17, 2014, Dr. Keah advised plaintiff that she believed it was necessary for him to remain out of work until April 24, 2014 in order to facilitate resolution of his acute medical condition.

73.     On April 17, 2014, Dr. Keah executed a Return to Work/School form, stating that plaintiff would be able to return to work on April 24, 2014.

74.     Subsequent to his April 17 examination, plaintiff from time to time assisted with work-related matters, and was in contact with Ms., Mateo and others.

11

75.     At approximately 9:15 a.m. on April 22, 2014, Ms. Matteo called plaintiff, and informed him that "the company had decided to part ways with you."

76.     Ms. Matteo further advised that plaintiff would soon receive a document offering him post-employment benefits such as severance.

77.     Shiseido did not any time in between plaintiff's departure from work on April 15 and his termination on April 22 send any FMLA paperwork to Mr. Young, nor did it take any actions known to Mr. Young to designate (or even consider designating) Mr. Young's leave as FMLA-covered leave.

78.     Thereafter, plaintiff did receive a document styled "Special Severance Agreement and Release," which was executed by Shiseido on April 22, 2014.

79.     In post-termination filings with one or more administrative agencies, Shiseido apparently asserted that plaintiff was terminated for performance reasons.

80.     Plaintiff believes, and therefore avers that defendants impermissibly interfered with his rights to FMLA-protected leave and/or acted in a retaliatory fashion by terminating his employment on April 22, 2014.

81.     Plaintiff believes, and therefore avers, that defendants' were or should have been aware of plaintiff's rights under FMLA, and that they failed to act in good faith when they, *inter alia*, failed to provide plaintiff with his rights under FMLA as required by law, and thereafter unlawfully terminated plaintiff's employment.

82.     As a result of the aforesaid unlawful actions by defendants, plaintiff suffered, and continues t suffer, damages in the form of, *inter alia*, lost wages and benefits.

## COUNT I
## PLAINTIFF v. ALL DEFENDANTS
### Violations of FMLA

83.     Plaintiff hereby incorporates all other paragraphs in this Complaint as though fully set forth at length herein.

84.     Defendants violated the FMLA by failing to provide plaintiff with notice of his rights under FMLA at or near the time of his FMLA leave.

85.     Defendants violated the FMLA by interfering with plaintiff's right to FMLA leave by terminating him while he was out on FMLA leave.

86.     Defendants violated the FMLA by terminating Mr. Young in retaliation for exercising his rights under the FMLA.

87.     As a result of the aforesaid conduct of defendants, Mr. Young suffered, *inter alia*, a loss of income and employment, and all of the benefits attendant thereto, which damages continue at present and which may continue to do so in the foreseeable future.

WHEREFORE, plaintiff, Matthew Young demands judgment in his favor and against defendants, Shiseido Americas Corporation and Beaute Prestige International, as follows:

a.     Full job reinstatement;

b.     all wages and benefits to which plaintiff is entitled pursuant to §2617(A) of FMLA;

c.     pre and post-judgment interest thereon in accordance with §2617(A)(ii) of FMLA;

d.     liquidated damages in accordance with §2617(A)(iii) of FMLA; and;

e.     such other relief that the Court deems just and appropriate under the circumstances, including but not limited to attorney's fees and costs.

13

## COUNT II
### PLAINTIFF v. ALL DEFENDANTS
### Violation of the Fair Labor Standards Act

88.    Plaintiff hereby incorporates by reference all other paragraphs of his complaint as though more fully set forth at length herein.

89.    Plaintiff was a non-exempt employee who was entitled to overtime payments during the entire period that he was employed by defendants.

90.    Plaintiff did not receive overtime payment for such overtime hours.

91.    Defendants knew or should have known that they were required to pay overtime to plaintiff.

92.    Plaintiff is entitled to receive payment equal to one and one-half his hourly rate for every hour worked beyond forty hours per week, going back three years in time from the date of this filing, along with attorney's fees, costs, liquidated damages and all other relief appropriate under the FLSA.

WHEREFORE, Plaintiff, Matthew Young, hereby demands judgment in his favor and against Defendants, Shiseido Americas Corporation and Beaute Prestige International, in a sufficient amount to fully compensate him for his losses in accordance with all governing statutes, along with attorney fees, liquidated damages, costs and such other relief as Your Honorable Court deems just and appropriate.

14

## COUNT III
### PLAINTIFF v. ALL DEFENDANTS
### Violation of Pennsylvania's Minimum Wage Act, 43 P.S.§§336.1, *et seq.* ("PMWA") and for Recovery Permitted Pursuant to Pennsylvania's Wage Payment and Collection Law, 43 Pa.C.S.A. § 260.1 *et seq.* ("WPCL")

93.     Plaintiff hereby incorporates by reference all other paragraphs of his complaint as though more fully set forth at length herein.

94.     Plaintiff was a non-exempt employee who was entitled to overtime payments during the entire period that he was employed by defendants.

95.     Plaintiff did not receive overtime payment for such overtime hours.

96.     Defendants knew or should have known that they were required to pay overtime to plaintiff.

97.     Plaintiff is entitled to receive payment equal to one and one-half his hourly rate for every hour worked beyond forty hours per week, going back three years in time from the date of this filing, along with attorney's fees, costs, liquidated damages and all other relief appropriate under the PMWA.

98.     Plaintiff further asserts that he is, at a minimum, entitled to be paid his normal hourly rate for all hours worked in excess of 40 per week throughout his employment in accordance with WPCL, along with all other remedies to which he is entitled thereunder.

WHEREFORE, Plaintiff, Matthew Young, hereby demands judgment in his favor and against Defendants, Shiseido Americas Corporation and Beaute Prestige International, in a sufficient amount to fully compensate him for his losses in accordance with all governing statutes, along with attorney fees, liquidated damages, costs and such other relief as Your Honorable Court deems just and appropriate.

April 22, 2016                    GALLAGHER LAW GROUP, P.C.


                            BY:   /s/ **John A. Gallagher**
                                  JOHN A. GALLAGHER, Esquire
                                  Counsel for Plaintiff
                                  1055 Westlakes Drive, 3rd Floor
                                  Berwyn, PA 19312
                                  (610) 647-5027
                                  (610) 647-5024 (fax)
                                  jag@johnagallagher.com

16